JOHN L. BURRIS, Esq., SBN 69888
BENJAMIN NISENBAUM, Esq., SBN 222173
JAMES COOK, Esq., SBN 300212
**Burris, Nisenbaum, Curry & Lacy, LLP**
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile: (510) 839-3882
John.Burris@bncllaw.com
Ben.Nisenbaum@bncllaw.com
James.Cook@bncllaw.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE NOTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TERRY DWAYNE ROBINSON, JR., individually, MANDINGO CAIN, individually, AMADEO GARCIA, JR., individually, ARON TYSON, individually, DAUNTE GELLINGTON, individually, ROBERT YOUNG, individually, TERRY THOMAS, individually<br><br>                            Plaintiffs,<br><br>     v.<br><br>CITY OF ANTIOCH, a municipal corporation; TAMMANY BROOKS, individually and in his official capacity as police chief for the CITY OF ANTIOCH; TONY MOREFIELD, individually and in his official capacity as interim police chief for the CITY OF ANTIOCH; STEVEN FORD, individually and in his official capacity as police chief for the CITY OF ANTIOCH; MATTHEW NUTT, individually and in his official capacity as a police officer for the CITY | CASE NO.: 3:23-cv-03773-SI<br><br><u>FIRST AMENDED COMPLAINT FOR DAMAGES</u><br><br><u>DEMAND FOR JURY TRIAL</u> |

1   OF ANTIOCH; JOSH EVANS,
    individually and in his official capacity as
2   a police sergeant for the CITY OF
    ANTIOCH; ERIC ROMBOUGH,
3   individually and in his official capacity as
    a police officer for the CITY OF
4   ANTIOCH; MORTEZA AMIRI,
    individually and in his official capacity as
5   a police officer for the CITY OF
    ANTIOCH; SCOTT DUGGAR,
6   individually and in his official capacity as
    a police officer for the CITY OF
7   ANTIOCH; JOHN RAMIREZ,
    individually and in his official capacity as
8   a police officer for the CITY OF
    ANTIOCH; TIMOTHY MANLY
9   WILLIAMS, individually and in his
    official capacity as a police officer for the
10  CITY OF ANTIOCH; TOM
    LENDERMAN, individually and in his
11  official capacity as a police officer for the
    CITY OF ANTIOCH; LOREN
12  BLEDSOE, individually and in his
    official capacity as a police sergeant for
13  the CITY OF ANTIOCH; THOMAS
    SMITH, individually and in his official
14  capacity as a police officer for the CITY
    OF ANTIOCH; CALVIN PRIETO,
15  individually and in his official capacity as
    a police officer for the CITY OF
16  ANTIOCH; ANDREA RODRIGUEZ,
    individually and in her official capacity
17  as a police officer for the CITY OF
    ANTIOCH; JONATHAN ADAMS,
18  individually and in his official capacity as
    a police officer for the CITY OF
19  ANTIOCH; DEVEN WENGER,
    individually and in his official capacity as
20  a police officer for the CITY OF
    ANTIOCH; DANIEL HARRIS,
21  individually and in his official capacity as
    a police officer for the CITY OF
22  ANTIOCH; ROBERT GERBER,
    individually and in his official capacity as
23  a police officer for the CITY OF
    ANTIOCH; KYLE HILL, individually

1    and in his official capacity as a police
officer for the CITY OF ANTIOCH; and
2    DOES 1-100, inclusive,

3                                    Defendants.

4

5                              **INTRODUCTION**

6

7        1.       In the early 2000s, Black and brown people migrated away from east and west

8    Oakland's urban sprawl, blight and oppressive policing. They relocated east to cities such as

9    Tracy, Pittsburgh, and Antioch. They sought the imprimatur of authentic citizenship intrinsic in

10   the greenery and rolling hills of those East Bay communities. Instead, these people were

11   subjected to a systematic and intentional effort to repress their existence through

12   discriminatory and violent policing. The victims complained about the conspiracy, spoken or

13   unspoken, of abuse over the years. Their calls for justice and reform went unheard for years

14   and years. On April 11, 2023, local media published certified proof of the depth of many

15

16   Antioch Police Department Officers' bigotry, racism, willingness to falsify evidence, and their

17   celebration of their own uses of unconstitutional and unreasonable force.

18       2.       On March 28, 2023, the Office of the District Attorney of Contra Costa County

19   published an investigative report detailing crimes of moral turpitude and criminal offenses

20

21   committed by sworn law enforcement officers within the City of Antioch Police Department.

22   From 2019-2022, Antioch police officers and sergeants exchanged hundreds of salacious text

23   messages riddled with vile and offensive language about community members. In those text

24   threads, officers bragged about using excessive force and beating arrest subjects so severely

25   that the officers themselves hurt their hands and feet. The District Attorney's report detailed

26

27   "derogatory, homophobic, and sexually explicit language and photographs shared by members

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

of the Antioch Police Department that demonstrates their racial bias and animus towards African Americans and other people of color in the community." Over a period of at least four years, the City of Antioch Police Department regularly referred to its citizens as "niggers," "niggas," "monkeys," "gorillas," "faggots," "water buffalos," "cunts," "pussies," "fat bitches," and more. Officers celebrated the violent targeting of Black community members ("we just ran down a monkey"; "I'm only stopping them cuz they black [sic]"; "I'll bury that nigger in my fields"; "I can't wait to forty all of them"). Furthermore, officers admitted to serious acts of lying and falsification ("we'll just say he refused to comply"; "I sometimes just say people gave me a full confession when they didn't. gets filed easier [sic]"). Appallingly, at least 45 officers participated in or were aware of this misconduct and did nothing.

3.      The widespread abuse by large numbers of the Antioch Police Department population, detailed in the investigative report, highlights a pattern and practice of discriminatory law enforcement based on race and gender. Officers engaged in vile derogatory speech, physical mistreatment of community members, and violations of individual civil rights. These abuses in question were the product of a culture of intolerance within the City of Antioch Police Department. This culture is rooted in the deliberate indifference of high ranking City officials, who have routinely acquiesced in the misconduct and otherwise failed to take necessary measures to curtail and prevent it. Despite the repeated and frequent nature of the misconduct and civil rights violations committed by its officers, high ranking City of Antioch officials failed to take any or appropriate remedial action. As a result, officers engaged in repeated and serious acts of misconduct and civil rights violations against citizens living, visiting, and/or traveling in Antioch.

4.      Plaintiffs, all of whom experienced malicious treatment by Antioch Police

Department officers during the time frame in which officers exchanged these text messages, recently discovered that the method with which officers interacted with them was based in racial animus, misogyny, homophobia, and other offensive conduct. Plaintiffs have reason to believe that each of their interactions with Antioch Police Department officers constituted numerous civil rights violations. Plaintiffs are informed and believe and thereon allege that said civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct.

5.      This is an action for damages brought pursuant to Title 42 U.S.C. §§ 1983 and 1988, and the Fourth Amendment to the United States Constitution, under California Civil Code Section § 52.1, and under the common law of California. It is alleged that these violations and torts were committed during the course and scope of the above-mentioned law enforcement officers' employment with the aforementioned government agencies and DOES 1-100.

## JURISDICTION AND VENUE

6.      This action arises under Title 42 of the United States Code, § 1983. Title 28 of the United States Code, §§ 1331 and 1343 confers jurisdiction upon this Court. The unlawful acts and practices alleged herein occurred in California, which is within the judicial district of this Court. This Court also has supplemental jurisdiction over Plaintiff's state law causes of action under 28 U.S.C. § 1367. Supplemental Jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1367 over the State law claims which are so related to federal claims in the action that they form part of the same case or controversy under Article III of the Constitution of the

1   United States of America. Venue is proper in this Court under 28 U.S.C. § 1391(b) because

2   Defendants are believed to reside in this district and all incidents, events, and occurrences

3   giving rise to this action occurred in this district.

4                                            **PARTIES**

5       7.      Plaintiff TERRY DWAYNE ROBINSON, JR. ("ROBINSON") has been and is

6   a resident of California and a United States Citizen. He brings this action on his own behalf.

7   ROBINSON was arrested and brutalized on July 1, 2022 by CITY OF ANTIOCH police

8   officers, including Defendant Officer MATTHEW NUTT. NUTT is implicated in the District

9   Attorney's investigation into the discriminatory text messages sent among Antioch Police

10  Department officers and sergeants. NUTT was a member of these group text changes and

11  received all of the salacious text messages uncovered in this scandal.

12      8.      Plaintiff MANDINGO CAIN ("CAIN") has been and is a resident of California

13  and a United States Citizen. He brings this action on his own behalf. CAIN was searched and

14  arrested without provocation or cause by CITY OF ANTIOCH police officers in October 2022.

15  The officers accused CAIN of illegally transporting a firearm, and CAIN was charged, but the

16  charges were eventually dismissed. At least one of the officers is a key participant in the

17  District Attorney's investigation into the discriminatory text messages sent among Antioch

18  Police Department officers and sergeants.

19      9.      Plaintiff AMADEO GARCIA, JR. ("GARCIA") has been and is a resident of

20  California and a United States Citizen. He brings this action on his own behalf. GARCIA was

21  arrested and brutalized on December 19, 2022 by CITY OF ANTIOCH police officers who

22  conducted an unlawful search of GARCIA's vehicle. GARCIA was charged with multiple

23  counts of possession, but the charges were eventually dismissed.

10.     Plaintiff ARON TYSON ("TYSON") has been and is a resident of California and a United States Citizen. He brings this action on his own behalf. TYSON was arrested and brutalized in August 2019 by CITY OF ANTIOCH police officers who conducted an unlawful search of TYSON's vehicle. TYSON was charged with possession, but the charges were eventually dismissed in August 2022.

11.     Plaintiff DAUNTE GELLINGTON ("GELLINGTON") has been and is a resident of California and a United States Citizen. He brings this action on his own behalf. GELLINGTON was brutalized on April 30, 2023 by several CITY OF ANTIOCH police officers who falsely accused him of threatening his brother. During the interaction, GELLINGTON was beaten so severely that he sustained a broken toe, bruised ribs, and scars on his knees and shoulders.

12.     Plaintiff ROBERT YOUNG ("YOUNG") has been and is a resident of California and a United States Citizen. He brings this action on his own behalf. YOUNG was harassed and robbed on July 3, 2022 by Defendant Officer ERIC ROMBOUGH. Officer ROMBOUGH is a key participant in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. ROMBOUGH boasted about "violating civil rights" and "only stopping [people] cuz they black [sic]."

13.     Plaintiff TERRY THOMAS ("TERRY THOMAS") has been and is a resident of California and a United States Citizen. He brings this action on his own behalf. TERRY THOMAS was slammed to the ground and arrested during an illegal search of his mother's home on July 12, 2022 by several CITY OF ANTIOCH police officers, including Defendant Officers ERIC ROMBOUGH, ROBERT GERBER, and KYLE HILL. TERRY THOMAS was

charged with murder and incarcerated but the charges were ultimately dismissed in August 2023. Officer ROMBOUGH is a key participant in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. ROMBOUGH boasted about "violating civil rights" and "only stopping [people] cuz they black [sic]." Officer GERBER is also implicated in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. GERBER sent text messages containing photos of gorillas and referring to Black people as "fag[s]" to other Antioch officers.

14.     Defendant CITY OF ANTIOCH ("CITY") is an incorporated public entity duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant City has possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the CITY OF ANTIOCH Police Department and its tactics, methods, practices, customs and usage. At all relevant times, Defendant CITY was the employer of Defendant OFFICERS, individually and as peace officers.

15.     Defendant CITY POLICE CHIEF TAMMANY BROOKS ("BROOKS"), at all times mentioned herein, was employed by Defendant CITY as the Chief of Police for the CITY, from May 2017 through October 2021, and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as the Chief of Police for the CITY.  Plaintiffs allege Defendant BROOKS was aware of the openly racist conduct of the police officers he employed, their use of excessive force as set forth herein, the widespread acceptance within the Antioch Police Department of Unconstitutional actions by Antioch police officers as set forth in the instant Complaint, and failed to take any remedial

measures, and tolerated, encouraged and ratified the repeated and widespread pattern and

practice of Unconstitutional actions by Defendant CITY OF ANTIOCH police officers as set

forth herein.

16.     Defendant CITY INTERIM POLICE CHIEF TONY MOREFIELD

("MOREFIELD"), at all times mentioned herein, was employed by Defendant CITY as the

Interim Chief of Police for the CITY, from October 2021 through May 2022, and was acting

within the course and scope of that employment. He is being sued individually and in his

official capacity as the Interim Chief of Police for the CITY. Plaintiffs allege Defendant

MOREFIELD was aware of the openly racist conduct of the police officers he employed, their

use of excessive force as set forth herein, the widespread acceptance within the Antioch Police

Department of Unconstitutional actions by Antioch police officers as set forth in the instant

Complaint, and failed to take any remedial measures, and tolerated, encouraged and ratified the

repeated and widespread pattern and practice of Unconstitutional actions by Defendant CITY

OF ANTIOCH police officers as set forth herein.

17.     Defendant CITY POLICE CHIEF STEVEN FORD ("FORD"), at all times

mentioned herein, was employed by Defendant CITY as the Chief of Police for the CITY, from

May 2022 through present, and was acting within the course and scope of that employment. He

is being sued individually and in his official capacity as the Chief of Police for the CITY.

Plaintiffs allege Defendant FORD was aware of the openly racist conduct of the police officers

he employed, their use of excessive force as set forth herein, the widespread acceptance within

the Antioch Police Department of Unconstitutional actions by Antioch police officers as set

forth in the instant Complaint, and failed to take any remedial measures, and tolerated,

encouraged and ratified the repeated and widespread pattern and practice of Unconstitutional actions by Defendant CITY OF ANTIOCH police officers as set forth herein.

18.     Defendant OFFICER MATTHEW NUTT ("NUTT") at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. NUTT was involved in the arrest of Plaintiff ROBINSON. NUTT is implicated in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. NUTT received numerous hateful text messages from his fellow CITY OF ANTIOCH police officers about Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). Furthermore, NUTT was a recipient of texts in which Defendant Officers bragged about "violating civil rights," "only stopping [people] cuz they black [sic]," and "sometimes just say[ing] people gave me a full confession when they didn't." Despite being a direct witness to this behavior, NUTT never intervened nor reported it to supervisors.

19.     Defendant OFFICER JOSH EVANS ("EVANS") at all times mentioned herein, was employed by Defendant CITY as a SERGEANT of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as a SERGEANT of the CITY. EVANS sent text messages about an unknown subject, detailing plans to "smash in and bite him, 40mm him, and call him a cunt." EVANS referred to Black people as "niggers" numerous times, and in discussing an unknown subject, he once stated: "I'm going to bury that nigger in my fields."

20.     Defendant OFFICER ERIC ROMBOUGH ("ROMBOUGH") at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. ROMBOUGH robbed Plaintiff YOUNG and was involved in the arrest of Plaintiff TERRY THOMAS. ROMBOUGH is also a key participant in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. ROMBOUGH sent text messages to other Antioch officers in which he referred to Black people as "niggers," "niggas," "gorillas," and "monkeys." On other occasions, ROMBOUGH boasted about "violating civil rights" and "only stopping [people] cuz they black [sic]."

21.     Defendant OFFICER MORTEZA AMIRI ("AMIRI") at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. AMIRI is a key participant in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. AMIRI sent texts to other Antioch officers in which he referred to Black people as "gorillas" and "pussies." He also admitted to serious offenses of falsification, claiming: "I sometimes just say people gave me a full confession when they didn't. gets filed easier [sic]."

22.     Defendant OFFICER SCOTT DUGGAR ("DUGGAR") at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. DUGGAR is a key participant in the District Attorney's

investigation into the discriminatory text messages sent among Antioch Police Department

officers and sergeants. DUGGAR sent text messages to other Antioch officers in which he

referred to Black people as "niggas."

23.     Defendant OFFICER JONATHAN RAMIREZ ("RAMIREZ") at all times

mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was

acting within the course and scope of that employment. He is being sued individually and in his

official capacity as an OFFICER of the CITY. RAMIREZ is implicated in the District

Attorney's investigation into the discriminatory text messages sent among Antioch Police

Department officers and sergeants. RAMIREZ sent texts to other Antioch officers in which he

expressed a desire to "40 that mfr (Thorpe) during the protest today [sic]." This is a reference

to the potential use of a .40mm less lethal launcher being utilized on current Antioch Mayor

Lamar Thorpe. RAMIREZ also sent numerous text messages in which he called Black people

"niggas" and "niggers."

24.     Defendant OFFICER TIMOTHY MANLY WILLIAMS ("MANLY

WILLIAMS") at all times mentioned herein, was employed by Defendant CITY as an

OFFICER of the CITY and was acting within the course and scope of that employment. He is

being sued individually and in his official capacity as an OFFICER of the CITY. MANLY

WILLIAMS is implicated in the District Attorney's investigation into the discriminatory text

messages sent among Antioch Police Department officers and sergeants. MANLY WILLIAMS

received numerous hateful text messages from his fellow CITY OF ANTIOCH police officers

about Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted

slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). Furthermore, MANLY

WILLIAMS was a recipient of texts in which Defendant Officers bragged about "violating

civil rights," "only stopping [people] cuz they black [sic]," and "sometimes just say[ing] people gave me a full confession when they didn't." Despite being a direct witness to this behavior, MANLY WILLIAMS never intervened nor reported it to supervisors.

25.     Defendant OFFICER TOM LENDERMAN ("LENDERMAN") at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. LENDERMAN is implicated in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. LENDERMAN received numerous hateful text messages from his fellow CITY OF ANTIOCH police officers about Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). Furthermore, LENDERMAN was a recipient of texts in which Defendant Officers bragged about "violating civil rights," "only stopping [people] cuz they black [sic]," and "sometimes just say[ing] people gave me a full confession when they didn't." Despite being a direct witness to this behavior, LENDERMAN never intervened nor reported it to supervisors.

26.     Defendant OFFICER LOREN BLEDSOE ("BLEDSOE") at all times mentioned herein, was employed by Defendant CITY as a SERGEANT of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as a SERGEANT of the CITY. BLEDSOE is implicated in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. BLEDSOE received numerous hateful text messages from his fellow CITY OF ANTIOCH police officers about Black people, calling them "gorillas,"

"niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). Furthermore, BLEDSOE was a recipient of texts in which Defendant Officers bragged about "violating civil rights," "only stopping [people] cuz they black [sic]," and "sometimes just say[ing] people gave me a full confession when they didn't." BLEDSOE was a member of these group text chats, and by refusing to intervene and halt the heinous behavior of fellow officers, BLEDSOE failed to perform his supervisory duties.

27.    Defendant OFFICER THOMAS SMITH ("THOMAS SMITH") at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. THOMAS SMITH is a key participant in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. THOMAS SMITH sent text messages to other Antioch officers in which he referred to Black people as "niggas" and to women as "bitches."

28.    Defendant OFFICER CALVIN PRIETO ("PRIETO") at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. PRIETO is a key participant in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. PRIETO sent text messages to other Antioch officers in which he referred to Black people as "niggas" and to women as "bitches."

29.    Defendant OFFICER ANDREA RODRIGUEZ ("RODRIGUEZ") at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. She is being sued individually and in

her official capacity as an OFFICER of the CITY. RODRIGUEZ is a key participant in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. RODRIGUEZ sent texts agreeing to target Black people for traffic citations, stating that it "will be easy" and "a good time."

30.     Defendant OFFICER JONATHAN ADAMS ("ADAMS") at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. ADAMS is a key participant in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. ADAMS sent text messages to other Antioch officers in which he referred to Black people as "niggers" and joked about all Black people looking the same.

31.     Defendant OFFICER DEVEN WENGER ("WENGER") at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. WENGER is implicated in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. WENGER received numerous hateful text messages from his fellow CITY OF ANTIOCH police officers about Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). Furthermore, WENGER was a recipient of texts in which Defendant Officers bragged about "violating civil rights," "only stopping [people] cuz they black [sic]," and

"sometimes just say[ing] people gave me a full confession when they didn't." Despite being a direct witness to this behavior, WENGER never intervened nor reported it to supervisors.

32.    Defendant OFFICER DANIEL HARRIS ("HARRIS") at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. HARRIS is implicated in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. HARRIS received numerous hateful text messages from his fellow CITY OF ANTIOCH police officers about Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). Furthermore, HARRIS was a recipient of texts in which Defendant Officers bragged about "violating civil rights," "only stopping [people] cuz they black [sic]," and "sometimes just say[ing] people gave me a full confession when they didn't." Despite being a direct witness to this behavior, HARRIS never intervened nor reported it to supervisors.

33.    Defendant OFFICER ROBERT GERBER ("GERBER") at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. GERBER was involved in the arrest of Plaintiff TERRY THOMAS. GERBER is implicated in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants. GERBER sent text messages containing photos of gorillas and referring to Black people as "fag[s]" to other Antioch officers. GERBER also received numerous hateful text messages from his fellow CITY OF ANTIOCH police officers about Black people, calling them

"gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). Furthermore, GERBER was a recipient of texts in which Defendant Officers bragged about "violating civil rights," "only stopping [people] cuz they black [sic]," and "sometimes just say[ing] people gave me a full confession when they didn't."

34.     Defendant OFFICER KYLE HILL ("HILL") at all times mentioned herein, was employed by Defendant CITY as an OFFICER of the CITY and was acting within the course and scope of that employment. He is being sued individually and in his official capacity as an OFFICER of the CITY. HILL was involved in the arrest of Plaintiff TERRY THOMAS.

35.     Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 100 inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend this Complaint to state the names and capacities of DOES 1-100, inclusive, when they have been ascertained.

## FACTUAL ALLEGATIONS

36.     Plaintiffs are informed and believe and thereon allege that DEFENDANTS NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL, and each of them, individually and/or acting in concert with one another, as well as other CITY OF ANTIOCH Police Officers (Does 1-100) engaged in a repeated pattern and practice of civil rights violations and other misconduct against citizens living, traveling, or visiting the Antioch neighborhoods where they were assigned.  Each Plaintiff

is likely to suffer a recurrence of the alleged violations of civil rights, or similar violation of civil rights, committed by police officers employed by Defendant CITY OF ANTIOCH.

37.    Plaintiffs are further informed and believe and thereon allege that said civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct.

38.    Plaintiffs are further informed and believe and thereon allege that said misconduct included, but was not limited to, subjecting people living, visiting, and/or traveling in Antioch neighborhoods to disparate treatment because of their race and/or gender. As a result, Plaintiffs and persons similarly situated to them, were subjected to unequal treatment, civil rights violations, and other misconduct by DEFENDANTS NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL, and/or City of Antioch police officers (Does 1-100).

39.    Plaintiffs are further informed and believe and thereon allege that despite the repeated and frequent nature of the misconduct and civil rights violations committed by Defendants NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL and DOES 1-100, high ranking CITY OF ANTIOCH officials and/or police department supervisors, including but not limited to, BROOKS, MOREFIELD, FORD, EVANS, BLEDSOE, DOES 1-100, and each of them, individually and/or acting in concert with one another, failed to take any or appropriate remedial action prior to the subject incidents involving the Plaintiffs. As a result, DEFENDANTS engaged

in repeated and serious acts of misconduct and civil rights violations against citizens living, visiting, and/or traveling in Antioch.

40.     Plaintiffs are informed and believe and thereon allege that as a matter of official policy—rooted in an entrenched posture of deliberate indifference to the constitutional rights of Black people who live, visit, and/or travel within Antioch in particular—Defendant CITY OF ANTIOCH has long allowed Plaintiffs and persons similarly situated to them, to be abused by its police officers, including by DEFENDANT NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL and/or other CITY OF ANTIOCH Police Officers (DOES-100).

41.     Plaintiffs are informed and believe and thereon allege that plaintiffs, and each of them, suffered the violation of their constitutional rights as a result of customs, policies, patterns and/or practices of Defendant CITY OF ANTIOCH, Defendants BROOKS, MOREFIELD, FORD, DOES 1-100, and each of them, including, but not limited to, deliberate indifference in the hiring, supervision, training, and discipline of members of the Antioch Police Department, including Defendant NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL and/or DOES 1-100, and/or each of them.

**TERRY ROBINSON, JR.**

42.     On July 1, 2022, during a traffic stop where TERRY ROBINSON, JR. was a passenger in his brother's car, multiple Antioch Police Department officers, including MATTHEW NUTT, arrested ROBINSON on the basis of two allegedly outstanding arrest warrants. However, the arrest warrants were outdated and inaccurate as ROBINSON had

already gone to court and resolved them. During the arrest, MATTHEW NUTT brutally beat Mr. ROBINSON while he was handcuffed, throwing him to the ground and repeatedly shoving, kicking, punching, and kneeing him in the legs, stomach, and ribs. Despite ROBINSON's pleas that he was having a panic attack and needed medical attention, NUTT continued to attack ROBINSON and failed to call an ambulance. ROBINSON spent six days in jail and was released with no criminal charges. Concurrent with ROBINSON's arrest, Antioch Police Department officers, including MATTHEW NUTT, sent and/or received numerous text messages about Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch").

43.    As a result, the text messages discovered in April 2023 imply that Antioch Police Department maliciously and unfairly targeted, arrested, and brutalized ROBINSON and that Defendant Officers' behavior stemmed from the discriminatory and violent culture of the Antioch Police Department. Moreover, Mr. ROBINSON withstood humiliation and associated emotional distress corresponding to the text message scandal.  Furthermore, Mr. ROBINSON suffered severe physical injuries caused by Defendant NUTT's use of excessive force.

**MANDINGO CAIN**

44.    In October 2022, Antioch Police Department officers seized MANDINGO CAIN's registered firearm after pulling him over and searching his car without cause, arrested Mr. Cain, and sexually harassed Mr. Cain's wife. After briefly entering the Quik Stop store at 1108 Sycamore Dr, Antioch, CA 94509, CAIN and his wife drove out of the store parking lot when two male Antioch police officers followed him in a police car and turned on their sirens. The officers spoke to CAIN through a loudspeaker and made him pull over in an area where there were no other people around. When CAIN asked why he was being pulled over, one of

the officers claimed that it was because his headlights and windows were tinted. The officers told CAIN to get out of the car. CAIN initially refused and told the officers that he was not on parole. One of the officers then yanked CAIN out of his car, made his wife exit the car, and searched the car thoroughly. The second officer commented on CAIN's wife's breasts, stating, "What's going on in your breast area?" This officer instructed the first officer to search CAIN's wife, but the search did not yield anything. While searching CAIN's car, the officers found marijuana and a registered firearm. The officers put back the marijuana after CAIN asked them to place it back, but they accused CAIN of illegally transporting a firearm. The officers arrested CAIN and transported him to the Martinez Detention Facility. CAIN posted bail and went to court three times, but the charges against him were ultimately dropped. CAIN is still waiting to get his firearm back from the Antioch Police Department. Concurrent with CAIN's arrest, multiple CITY OF ANTIOCH officers sent numerous text messages about Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). At least one of the officers involved in CAIN's arrest is a key participant in the District Attorney's investigation into the discriminatory text messages sent among Antioch Police Department officers and sergeants.

45.     As a result, the text messages discovered in April 2023 imply that Antioch Police Department maliciously and unfairly targeted and prosecuted CAIN, and that Defendant officers' behavior stemmed from the discriminatory and violent culture of the Antioch Police Department. Moreover, Mr. CAIN withstood humiliation and associated emotional distress corresponding to the text message scandal. Furthermore, CAIN lost his lawfully possessed firearm and suffered physical and emotional distress from watching Antioch police officers sexually harass his wife and being yanked out of his car, arrested, and jailed.

1

**AMADEO GARCIA, JR.**

2      46.     On December 19, 2022, Antioch Police Department officers used excessive

3   force during an unlawful search of AMADEO GARCIA, JR.'s vehicle, resulting in the arrest

4   of GARCIA. CITY OF ANTIOCH police officers staked out the motel room rented by

5   GARCIA in Antioch, CA. The officers pulled over GARCIA's vehicle due to the absence of

6

7   license plates.  The automobile was newly purchased with dealer tags in the window. Officers

8   confirmed that the vehicle was in legal standing. The driver of the vehicle was GARCIA.

9   Multiple officers arrived on the scene including a K-9 unit. The K-9 unit alerted officers to

10   the vehicle. The K-9 unit displayed unprofessional behavior, including jumping onto the hood

11   of the vehicle. Officers then removed GARCIA from the vehicle by reaching into the car and

12   unlocking the car door. After removing GARCIA from the vehicle, they proceeded to deploy

13   the taser on GARCIA for an extended length of time. GARCIA was charged with multiple

14

15   counts of possession. These charges were later dismissed by the court under California Penal

16   Code 1385. Concurrent with GARCIA's arrest, multiple CITY OF ANTIOCH officers sent

17   numerous text messages about Black people, calling them "gorillas," "niggers," "monkeys,"

18   and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat

19   bitch").

20      47.     As a result, the text messages discovered in April 2023 imply that Antioch

21   Police Department maliciously and unfairly targeted, brutalized, and prosecuted GARCIA,

22

23   and that Defendant officers' behavior stemmed from the discriminatory and violent culture of

24   the Antioch Police Department. Moreover, Mr. GARCIA withstood humiliation and

25   associated emotional distress corresponding to the text message scandal. Furthermore, due to

26   the Antioch police officers' use of excessive force, GARCIA suffered physical injury as well

27

28

as incarceration.

**ARON TYSON**

48.     In August 2019, Antioch Police Department officers pulled over ARON
TYSON at the intersection of Sycamore Drive and Peppertree Way in Antioch, CA for
having tinted car windows, threw TYSON to the ground, searched his vehicle, and arrested
him. After TYSON provided the officers with his license and registration, the officers told
him to get out of the car, claiming that they could smell marijuana. Neither TYSON nor his
girlfriend had been smoking marijuana. The officers asked TYSON if they could search the
car, but when TYSON said no, the officers pushed him to the ground, painfully twisted his
arms upwards behind his back, and handcuffed him. TYSON had a metal plate in his arm, so
he asked the officers to not be rough with him. However, the officers continued to force
TYSON to the ground and hurt his arms. The officers then searched the car and found a
firearm and some marijuana. The officers also searched TYSON's girlfriend and found drugs,
which they falsely stated belonged to TYSON. The officers arrested TYSON and took him to
the station for booking. TYSON posted bail and was later charged with possession of
controlled substances. However, the charges were dropped in August 2022. Concurrent with
TYSON's arrest, multiple CITY OF ANTIOCH officers sent numerous text messages about
Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to
refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch").

49.     As a result, the text messages discovered in April 2023 imply that Antioch
Police Department maliciously and unfairly targeted, brutalized, and prosecuted TYSON, and
that Defendant officers' behavior stemmed from the discriminatory and violent culture of the
Antioch Police Department. Moreover, Mr. TYSON withstood humiliation and associated

emotional distress corresponding to the text message scandal. Furthermore, due to the Antioch police officers' use of excessive force, TYSON suffered physical injuries in his arms and emotional distress. The items that the officers took while searching him and his vehicle have not yet been returned to him.

## DAUNTE GELLINGTON

50.     On April 30, 2023 at around 5 pm, Antioch Police Department officers falsely accused DAUNTE GELLINGTON of threatening his brother, slammed him to the ground, and attacked him while he was handcuffed. GELLINGTON went to the Antioch Police Department in Antioch, CA with his mother and siblings to file a report for an unrelated matter. After the family submitted the report and went outside, an Antioch police officer claimed that GELLINGTON threatened his brother, even though nobody in the family heard him do so. Four officers threw GELLINGTON to the ground, handcuffed him, picked him up, slammed him against the ground again, dragged him through concrete, and kicked him while holding him face down. At least one officer pushed their knees into GELLINGTON's back. When GELLINGTON's mother begged the officers to stop, they threatened to tase or handcuff her if she did not back off. The officers then detained GELLINGTON for an hour before releasing him. GELLINGTON went to the Sutter Health hospital for medical attention afterwards. Concurrent with the officers' beating of GELLINGTON, multiple CITY OF ANTIOCH officers sent numerous text messages about Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch").

51.     As a result, the text messages discovered in April 2023 imply that Antioch Police Department maliciously and unfairly targeted and brutalized GELLINGTON, and that

Defendant officers' behavior stemmed from the discriminatory and violent culture of the Antioch Police Department. Moreover, Mr. GELLINGTON withstood humiliation and associated emotional distress corresponding to the text message scandal. Furthermore, due to the Antioch police officers' use of excessive force, GELLINGTON suffered severe physical injuries, including a broken toe, bruised ribs, and scars on his knees and shoulders, as well as emotional distress.

**ROBERT YOUNG**

52.     On July 3, 2022 at approximately 3 pm, Defendant Officer ERIC ROMBOUGH illegally pulled over, harassed, and robbed ROBERT YOUNG. ROMBOUGH pulled over YOUNG near 1080 Sycamore Drive, Antioch, CA 94509. ROMBOUGH refused to tell YOUNG why he pulled him over. ROMBOUGH then took $900 from YOUNG, locked YOUNG in his patrol car, and stole YOUNG's marijuana. ROMBOUGH then let YOUNG out of the patrol car and drove off without filing a report. Concurrent with YOUNG's encounter with ROMBOUGH, multiple CITY OF ANTIOCH officers sent numerous text messages about Black people, calling them "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.: "faggot," "pussies," "cunt," "fat bitch"). Additionally, ROMBOUGH boasted about "violating civil rights" and "only stopping [people] cuz they black [sic]."

53.     As a result, the text messages discovered in April 2023 imply that Antioch Police Department maliciously and unfairly targeted YOUNG, and that Defendant Officer ROMBOUGH's behavior stemmed from the discriminatory and violent culture of the Antioch Police Department. Moreover, Mr. YOUNG withstood humiliation and associated emotional distress corresponding to the text message scandal. Furthermore, due to

1    ROMBOUGH's conduct in robbing YOUNG, YOUNG lost $900 and suffered emotional
2    distress.

3    **TERRY THOMAS**

4        54.    On July 12, 2022 at 2903 Campbell Lane, Tracy, CA 95377, Antioch Police
5    Department officers, including Defendant Officers ERIC ROMBOUGH, ROBERT
6    GERBER, and KYLE HILL, unlawfully raided the home of TERRY THOMAS's mother
7    without a search warrant, slammed TERRY THOMAS to the ground, and arrested him.
8    Several Antioch police officers and a SWAT team raided the home of Tiffany Turner,
9    TERRY THOMAS's mother. The officers did not present Ms. Turner with a warrant when
10   she asked for one. The officers then slammed TERRY THOMAS to the ground, claiming that
11   he was trying to escape through a window in the back of the home. The officers then arrested,
12   handcuffed, and transported TERRY THOMAS to the juvenile detention hall. While TERRY
13   THOMAS was being transported, the officers continued to search Ms. Turner's home. The
14   officers searched the home for five hours and seized TERRY THOMAS's ID and cell phone.
15   TERRY THOMAS was charged with murder and incarcerated, but his charges were
16   ultimately dropped in August 2023. Concurrent with TERRY THOMAS's arrest, multiple
17   CITY OF ANTIOCH officers sent numerous text messages about Black people, calling them
18   "gorillas," "niggers," "monkeys," and using other targeted slurs to refer to subjects (i.e.:
19   "faggot," "pussies," "cunt," "fat bitch"). In these texts, ROMBOUGH boasted about
20   "violating civil rights" and "only stopping [people] cuz they black [sic]." GERBER also sent
21   texts containing photos of gorillas and referring to Black people as "fag[s]."

22       55.    As a result, the text messages discovered in April 2023 imply that Antioch
23   Police Department maliciously and unfairly targeted, brutalized, and prosecuted TERRY

THOMAS, and that Defendant Officers' behavior stemmed from the discriminatory and violent culture of the Antioch Police Department. Moreover, TERRY THOMAS withstood humiliation and associated emotional distress corresponding to the text message scandal. Furthermore, due to the officers' use of excessive force in slamming TERRY THOMAS to the ground, TERRY THOMAS suffered physical pain and injuries as well as emotional distress.

## FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983 – Excessive Force)
**(All Plaintiffs Against Defendants NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL, and DOES 1 - 100)**

56.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 55 of this Complaint.

57.     In doing the acts complained of herein, Defendants NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL, and/or DOES 1-100, individually and/or while acting in concert with one another, did act under color of state law to deprive Plaintiffs as alleged heretofore of certain constitutionally protected rights, including, but not limited to:

   a.   The right to be free from unreasonable police use of force in violation of the Fourth Amendment;

58.     Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION

**(*Monell* - 42 U.S.C. § 1983)**
**(All Plaintiffs Against Defendant CITY, BROOKS, MOREFIELD, FORD, BLEDSOE and DOES 1-100)**

59.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 58 of this Complaint.

60.     As against Defendant CITY OF ANTIOCH and/or Defendants BROOKS, MOREFIELD, FORD, BLEDSOE, and/or DOES 1-100 in their capacity as official policy-maker(s) for the CITY OF ANTIOCH, the Plaintiffs, and each of them, further allege that the acts and/or omissions alleged in the Complain herein are indicative and representative of a repeated course of conduct by members of the CITY OF ANTIOCH Police Department tantamount to a custom, policy, or repeated practice of condoning and tacitly encouraging the abuse of police authority, and disregard for the constitutional rights of citizens.

61.     Upon information and belief, Plaintiffs further allege that numerous African Americans were systematically physically and verbally harassed by members of the CITY OF ANTIOCH Police Department when they were stopped for "walking while black" or "driving while black" without probable cause or reasonable suspicion, searched without consent, and verbally abused.

62.     Plaintiffs are further informed and believe and thereon allege that the acts alleged herein are the direct and proximate result of the deliberate indifference of Defendants CITY, BROOKS, MOREFIELD, FORD, BLEDSOE, DOES 1-100, and each of them, to repeated acts of police misconduct which were tacitly authorized, encouraged, or condoned by the CITY OF ANTIOCH, BROOKS, MOREFIELD, FORD, BLEDSOE, DOES 1-100, and each of them.

63.     The injuries to the Plaintiffs, and each of them, were the foreseeable and proximate result of said customs, policies, patterns, and/or practices of Defendants CITY OF

ANTIOCH, BROOKS, MOREFIELD, FORD, BLEDSOE, DOES 1-100, and each of them. This conduct was condoned and ratified, by Antioch Police Department Supervisors, and there was no discipline against any of the named defendant officers for their conduct.

64.     Plaintiffs are further informed and believe and thereon allege that the damages sustained as alleged herein were the direct and proximate result of municipal customs and/or policies of deliberate indifference in the training, supervision, and/or discipline of members of the CITY OF ANTIOCH Police Department.

65.     Plaintiffs are further informed and believe and thereon allege that Plaintiffs' damages and injuries were caused by the customs, policies, patterns, or practices of the CITY OF ANTIOCH, BROOKS, MOREFIELD, FORD, BLEDSOE, DOES 1-100, and each of them, of deliberate indifference in the training, supervision, and/or discipline of Antioch Police Officers including, but not limited to, NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL, DOES 1-100, and/or each of them.

66.     The aforementioned customs, policies, or practices of Defendants CITY OF ANTIOCH, BROOKS, MOREFIELD, FORD, DOES 1-100, and each of them, resulted in the deprivation of Plaintiffs' connotational rights including, but not limited to, the following:

a.  The right to be free from excessive and unnecessary police use of force;

b.  The right to a Familial Relationship.

c.  The right to be free from Racial Bias in the conduct of Antioch police officers in violation of 42. U.S.C. section 1981.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIRD CAUSE OF ACTION**
**(42 U.S.C. § 1981 – Bias)**
**(All Plaintiffs Against Defendants NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL, and DOES 1 - 100)**

67.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 66 of this Complaint.

68.     Plaintiffs are informed and believe and thereon allege that CITY officers NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL, and DOES 1-100 were biased toward the public. Defendants demonstrated biased, including, but not limited to, bias toward the race, gender, and ethnicity of the Plaintiffs.

69.     Plaintiffs would not have suffered excessive force and prosecution by the defendants, but for the Plaintiffs' race, gender, and/or ethnicity.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**FOURTH CAUSE OF ACTION**
**(42 U.S.C. § 1985-86 - Conspiracy)**
**(All Plaintiffs Against Defendants CITY, BROOKS, MOREFIELD, FORD, NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL, and DOES 1 - 100)**

70.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 69 of this Complaint.

71.     In doing the acts complained of herein, Defendants CITY, BROOKS, MOREFIELD, FORD, NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ,

MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO,

RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL, and/or DOES 1-100,

individually and/or while acting in concert with one another, conspired for the purpose of

depriving Plaintiffs and/or persons similarly situated to Plaintiffs, either directly or indirectly,

of the equal protection of the laws or of equal privileges and immunities under the laws as

alleged in this complaint in violation of 42 U.S.C. § 1985.

72.     Plaintiffs are further informed and believe and thereon allege that Defendant

CITY OF ANTIOCH, Defendants BROOKS, MOREFIELD, FORD, EVANS, BLEDSOE,

DOES 1-100, and each of them, had the power to stop and/or aid in preventing the conspiracy

and/or conspiracies by Defendants NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR,

RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO,

RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL, DOES 1-100, and/or each of

them, as alleged herein, but instead maintained customs, policies, and/or practices which

encouraged, authorized, condoned, ratified, failed to prevent, and/or failed to aid in the

prevention of the wrongs conspired to be done by Defendants NUTT, EVANS, ROMBOUGH,

AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE,

THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL,

DOES 1-100, and/or each of them.

73.     As a result of the failure and/or refusal of Defendants BROOKS, MOREFIELD,

FORD, EVANS, BLEDSOE, DOES 1-100, and each of them, to prevent or aid in preventing

the commission of the conspiracy and/or conspiracies by Defendants NUTT, EVANS,

ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN,

BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS,

GERBER, HILL, and DOES 1-100, Plaintiffs and persons similarly situated to them are entitled to recover damages in amounts to be determined according to proof.

**FIFTH CAUSE OF ACTION**
**(42 U.S.C. § 1981)**
**(Against Defendants CITY, BROOKS, MOREFIELD, FORD, NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL, and DOES 1 - 100)**

74.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 73 of this Complaint.

75.    In doing the acts complained of herein, Defendants CITY OF ANTIOCH, BROOKS, MOREFIELD, FORD, NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL, and/or DOES 1-100, individually and/or while acting in concert with one another, engaged in a pattern and practice of discriminatory conduct towards minority communities by subjecting them to more frequent and aggressive policing than similarly situated individuals of a different race, by using racial slurs, excessive force, and harassment tactics, and by denying them the same level of protection and services afforded to individuals of a different race. These civil rights violations and/or misconduct included, but was not limited to, assaults, beatings, false arrests, unreasonable searches and seizures, intimidation, kidnapping, falsifying reports, denial of equal protection, racial discrimination, conspiracy to violate civil rights and/or other misconduct based on race and/or gender.

76.    Plaintiffs are further informed and believe and thereon allege that said misconduct included, but was not limited to, subjecting people living, visiting, and/or traveling in Antioch neighborhoods to disparate treatment because of their race and/or gender. As a result, Plaintiffs

and persons similarly situated to them, were subjected to unequal treatment, civil rights violations, and other misconduct by Defendants CITY, NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL, and/or CITY OF ANTIOCH Police Officers (Does 1-100).

77.     Plaintiffs are informed and believe and thereon allege that as a matter of official policy—rooted in an entrenched posture of deliberate indifference to the constitutional rights of Black people who live, visit, and/or travel within Antioch in particular—Defendant CITY OF ANTIOCH has long allowed Plaintiffs and persons similarly situated to them, to be abused by its police officers, including by DEFENDANTS NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL, and/or other CITY OF ANTIOCH Police Officers (DOES-100).

78.     Plaintiffs are further informed and believe and thereon allege that despite the repeated and frequent nature of the misconduct and civil rights violations committed by Defendants NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL, and DOES 1-100, high ranking CITY OF ANTIOCH officials and/or police department supervisors, including but not limited to, BROOKS, MOREFIELD, FORD, EVANS, BLEDSOE, DOES 1-100, and each of them, individually and/or acting in concert with one another, failed to take any or appropriate remedial action prior to the subject incidents involving the Plaintiffs. As a result, Defendants

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

engaged in repeated and serious acts of misconduct and civil rights violations against citizens living, visiting, and/or traveling in Antioch.

79.     Plaintiffs are informed and believe and thereon allege that plaintiffs, and each of them, suffered the violation of their constitutional rights as a result of customs, policies, patterns and/or practices of Defendant CITY OF ANTIOCH, Defendants BROOKS, MOREFIELD, FORD, EVANS, BLEDSOE, DOES 1-100, and each of them, including, but not limited to, deliberate indifference in the hiring, supervision, training, and discipline of members of the Antioch Police Department, including Defendants NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL, and/or DOES 1-100, and/or each of them. Therefore, Plaintiffs also seek relief against the Defendants for their failure to take reasonable steps to prevent and remedy the discriminatory conduct of its officers.

80.     Plaintiffs further allege that the conduct of Defendants CITY OF ANTIOCH, BROOKS, MOREFIELD, FORD, NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO, RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL, and/or DOES 1-100 has caused them to suffer damages, including but not limited to physical harm, emotional distress, and/or injury to reputation. Plaintiffs seek relief in the form of compensatory damages, punitive damages, injunctive relief, and any other relief that the court deems just and proper under the circumstances.

## SIXTH CAUSE OF ACTION
### (42 U.S.C. § 1981 - Malicious Prosecution)
### (CAIN, GARCIA, TYSON, and TERRY SMITH against Defendants BROOKS, MOREFIELD, FORD, and DOES 1 - 100)

81.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 80 of this Complaint.

82.     Defendants maliciously prosecuted the Plaintiffs as stated herein. Defendants brought claims against each of the named plaintiffs without probable cause to do so.

83.     The defendants brought claims against Plaintiffs with subjective malice. Defendants used bias, including racial bias, gender bias, sexuality bias, bias against body-types, and/or religious bias in determining their decisions to prosecute the named Plaintiffs.

84.     Each of the Plaintiffs resolved the actions against them. Plaintiffs ultimately resolved the actions in their favors.

85.     Plaintiffs suffered damages due to the malicious prosecution brought on by the Defendants in this matter.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## JURY DEMAND

Plaintiffs hereby demand a jury trial in this action.

## PRAYER

WHEREFORE, Plaintiffs pray for relief, as follows:

1.     For general damages according to proof;

2.     For special damages, including but not limited to, past, present and/or future wage loss, income and support, medical expenses and other special damages in a sum to be determined according to proof;

3.     For punitive damages and exemplary damages in amounts to be determined according to proof as to Defendants NUTT, EVANS, ROMBOUGH, AMIRI, DUGGAR, RAMIREZ, MANLY WILLIAMS, LENDERMAN, BLEDSOE, THOMAS SMITH, PRIETO,

RODRIGUEZ, ADAMS, WENGER, HARRIS, GERBER, HILL, and DOES 1-100, or each of them;

4.      Any and all permissible statutory damages;

5.      For reasonable attorney's fees pursuant to 42 U.S.C. §1988;

6.      For cost of suit herein incurred;

7.      For injunctive relief, including necessary policy and practice changes to Defendant CITY OF ANTIOCH's police department and Court Monitoring to ensure compliance with such necessary policy and practice changes ; and

8.      For such other and further relief as the Court deems just and proper.


Dated: August 9, 2023                                          **BNCL Law**

                                                               */s/ John L. Burris*
                                                               John L. Burris
                                                               Benjamin Nisenbaum
                                                               James Cook
                                                               Attorneys for Plaintiffs